JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-07451-RGK (ASx) | Date | February 5, 2014 |
|---|---|---|---|
| Title | *Reliance Medical Systems, LLC v. United States Department of Health Office of Inspector General et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       **(IN CHAMBERS) Order re: Defendant's Motion to Dismiss** (DE 14)

## I.   INTRODUCTION

Plaintiff Reliance Medical Systems, LLC filed a Complaint in this Court on October 8, 2013. The Complaint names as defendants the United States Department of Health and Human Services' ("HHS") Office of Inspector General ("OIG") and, in his official capacity, Daniel R. Levinson, the Inspector General of HHS (collectively, "Defendants"). The action arises out of OIG's issuance of a March 26, 2013 Special Fraud Alert ("2013 SFA") stating that "physician-owned distributors" ("PODs") are "inherently suspect under the anti-kickback statute." Plaintiff seeks a judicial determination under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the 2013 SFA's designation of PODs as "inherently suspect" is "invalid, incorrect, and/or inaccurate." Plaintiff contends that there is an actual, justiciable controversy based on Defendants' alleged violations of: (1) the First Amendment of the U.S. Constitution; (2) the Fifth and Fourteenth Amendments of the U.S. Constitution; and (3) the Administrative Procedure Act.

Defendants filed a Motion to Dismiss on December 9, 2013. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## II.   FACTUAL BACKGROUND

### A.   Reliance Medical Systems, LLC

According to the allegations in Plaintiff's Complaint, Reliance is a company that collaborates

with spine surgeons to design customized spinal implant devices and surgical tools. From 2006, when the company was founded, until 2012, Reliance and its related companies included physicians as owners. In 2012, Reliance moved away from a physician ownership model. Reliance now wishes to return to a physician ownership model and structure a business that fully complies with federal law, including the anti-kickback statute, 42 U.S.C. § 1320a-7b.

### B.   Office of Inspector General's Special Fraud Alerts

The Office of the Inspector General is an office within the United States Department of Health and Human Services. Congress established OIG in 1976 "to identify and eliminate fraud, abuse, and waste in Health and Human Services Programs." In furtherance of this purpose, OIG issues Special Fraud Alerts to discuss "trends of health care fraud and certain practices of an industry-wide character." 59 Fed. Reg. 65,372, 65,373 (Dec. 19, 1994). The purpose of these SFAs is "to provide general guidance to the healthcare industry" and to offer "additional insight to the Medicare carrier fraud units in identifying health care fraud schemes." *Id*. Since 1994, OIG has published SFAs in the Federal Register. *Id*. at 65,372. Congress passed a statute in 1996 that authorized individuals to request SFAs from OIG. *See* 42 U.S.C. § 1320a-7d(c); H.R. Rep. No. 104-496, at 85 (1996). OIG considers such requests and, "if appropriate," issues a SFA. 42 U.S.C. § 1320a-7d(c)(1)(B).

### C.   The Anti-Kickback Statute

As part of its mission to eliminate fraud in federal healthcare programs, OIG investigates potential violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). The statute prohibits knowingly and willfully soliciting or receiving remuneration in return for purchasing items or referring patients for services covered by federal healthcare programs. It also prohibits offering or paying remuneration to induce such purchases or referrals.

### D.   OIG's Previous Guidance On The Anti-Kickback Statute

OIG has previously issued guidance regarding physician investments and the Anti-Kickback Statute. OIG issued an SFA on joint ventures in 1989. The SFA identified "questionable features, which separately or taken together may result in a business arrangement that violates the anti-kickback statute." 59 Fed. Reg. 65,374 (Dec. 19, 1994)(publishing SFA originally issued in 1989). In 2006, OIG responded to a request for guidance regarding physician investments in medical device manufacturers and distributors. (Def.'s Mtn. to Dismiss Mem. of P. & A., Ex. B.) OIG observed that these arrangements created "the strong potential for improper inducements" and "should be closely scrutinized under the fraud and abuse laws." (*Id*. at 25.)

### E.   The 2013 Special Fraud Alert

On March 26, 2013, OIG issued an SFA addressing "physician-owned entities that derive revenue from selling, or arranging for the sale of, implantable medical devices ordered by their physician-owners for use in procedures the physician-owners perform on their own patients..." The 2013 SFA noted that

OIG has repeatedly expressed concerns about arrangements that exhibit questionable features with regard to the selection and retention of investors, the solicitation of capital contributions, and the distribution of profits. Such questionable features may include, but are not limited to: (1) selecting investors because they are in a position to generate substantial business for the entity, (2) requiring investors who cease practicing in the service area to divest their ownership interests, and (3) distributing extraordinary returns on investment compared to the level of risk involved.

(Def.'s Mtn to Dismiss Mem. Of P. & A., Ex. A, at 21.) The 2013 SFA went on to state that

> OIG recognizes that the lawfulness of any particular POD under the anti-kickback statute depends on the intent of the parties. Such intent may be evidenced by a POD's characteristics, including the details of its legal structure; its operational safeguards; and the actual conduct of its investors, management entities, suppliers, and customers during the implementation phase and ongoing operations. *Nonetheless, we believe that PODS are inherently suspect under the anti-kickback statute.*

(Def.'s Mtn to Dismiss Mem. Of P. & A., Ex. A, at 23.) (emphasis added). The 2013 SFA listed a number of "suspect characteristics" which, when present in a POD, would cause OIG to be "particularly concerned." (Def.'s Mtn to Dismiss Mem. Of P. & A., Ex. A, at 23.)

### F. **Plaintiff's Complaint**

Reliance brought suit on October 8, 2013. Reliance filed a First Amended Complaint on November 14, 2013. Reliance alleges that it has been harmed by the 2013 SFA. Specifically, Reliance alleges that it wishes to form a physician-owned entity, "but it cannot speak with physicians about the formation of a physician-owned entity out of concern that any such entity that is formed will be 'inherently suspect[ed]' of violating laws that carry severe criminal and civil penalties." (Pl.'s FAC, at 11.) Reliance is also concerned that efforts to form new physician-owned entities will result in additional investigations of Reliance and the physicians with whom they speak. (Pl.'s FAC, at 11-12.) Finally, Reliance contends that its ability to enter into arrangements with hospitals and ambulatory surgery centers would be curtailed because the 2013 SFA warns hospitals that they "may be at risk" if they enter into such arrangements with physician-owned entities. (Pl.'s FAC, at 12.)

Reliance alleges three causes of action: (1) Violation of First Amendment Right of Speech; (2) Violation of Due Process Rights Under the Fifth and Fourteenth Amendment; and (3) Violation of the Administrative Procedure Act. With regard to the third cause of action, Reliance alleges that OIG "was required under the APA to give interested persons an opportunity to participate in the rulemaking through submission of written data, views or arguments." (Pl.'s FAC, at 14.)

## III. **JUDICIAL STANDARD**

### A. **Rule 12(b)(1)**

A party may move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). When a defendant files a Rule 12(b)(1) motion, the plaintiff has the burden of establishing that the court has subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). At the pleading stage, a plaintiff must meet this burden by alleging sufficient facts to show a proper basis for the court to assert subject matter jurisdiction over the action. Fed. R. Civ. P. 8(a)(1); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

### B. **Rule 12(b)(6)**

A party may move to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must assume allegations in the challenged complaint are true, and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court shall not consider facts outside the complaint. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521

F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, the court need not accept as true conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### C.  **28 U.S.C. § 2201**

28 U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." To grant relief under § 2201(a), the district court must be presented with "concrete legal issues, presented in actual cases, not abstractions..." *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89(1947)).

Even when presented with such a controversy, "a district court may decline to exercise jurisdiction over a declaratory action even though subject matter jurisdiction is otherwise proper." *Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1166 (9th Cir. 1998) (citing 28 U.S.C. § 2201(a); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942)). As long as the action is "purely or primarily declaratory in nature," "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Snodgrass*, 147 F.3d at 1166 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). "Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Eccles v. Peoples Bank of Lakewood Vill., Cal.*, 333 U.S. 426, 431 (1948).

## IV.  **DISCUSSION**

Reliance seeks, among other injunctive relief, a judicial determination that the 2013 SFA's designation of PODs as "inherently suspect" is "invalid, incorrect, and/or inaccurate."  Defendants contend that Reliance lacks standing and that the issues are not ripe for judicial determination. For the reasons that follow, the Court dismisses this action. The Court holds that Plaintiff has not demonstrated it suffered an injury-in-fact as required to confer standing. The Court further holds that, even if Plaintiff could demonstrate it has standing, it would not be appropriate to exercise jurisdiction. It would be unwise to exercise jurisdiction in light of the Court's serious reservations about whether this matter is presently fit for judicial resolution.

### A.  **Reliance Lacks Standing**

Defendants contend that Reliance lacks standing to bring this action because Reliance has not alleged an injury-in-fact. The Court agrees.

Article III, section 2 of the United States Constitution limits the judicial power of the United States to cases and controversies. Article III has been interpreted to bar federal courts from exercising jurisdiction over suits raising "abstract questions" or claims "based merely on 'assumed potential invasions' of rights." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 324-25 (1936). Federal courts police this limit on their power through the doctrine of standing. *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). To have standing to bring an action in federal court, a plaintiff must establish an injury-in-fact that is fairly traceable to defendant's conduct and that is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury must be

"concrete and particularized" and "actual or imminent," not "'conjectural' or 'hypothetical.'" *Id.*

The standing inquiry is "especially rigorous" when a dispute asks a court to pass judgment on the constitutionality of the actions of another branch of the Federal Government. *See, e.g., Clapper v. Amnesty Int'l, USA*, 133 S.Ct. 1138, 1147-48 (2013) (citations omitted). This is because the law of standing is "built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.*

1.   *Reliance Has Not Alleged A First Amendment Injury Sufficient To Confer Standing*

Plaintiff does not allege that the 2013 SFA has been "enforced" against it. Instead, Plaintiff alleges two types of First Amendment injury, one present and the other prospective. First, Plaintiff alleges that the 2013 SFA is having a "chilling effect" on Reliance's right to speak with physicians about forming a physician-owned entity. Second, Reliance's Complaint could be read to contend that if the 2013 SFA is enforced against Reliance, it would interfere with Reliance's First Amendment right to speak with physicians about forming a physician-owned entity. Neither purported First Amendment injury suffices to support standing because, even if the 2013 SFA were enforced, it would not proscribe the conduct Reliance contends is constitutionally protected speech.

Reliance argues that pre-enforcement review is appropriate in this case. Reliance rightly notes that courts have allowed "pre-enforcement" challenges under the First Amendment in order to avoid potential chilling of speech. *See, e.g., Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010). However, to be entitled to pre-enforcement review, a plaintiff still must demonstrate "an actual or imminent injury to *a legally protected interest*." *Id.* (emphasis added). Reliance has failed to make this showing. Reliance claims that it has a legally protected interest in talking to care providers about forming a physician-owned entity. But even if the 2013 SFA or Anti-Kickback Statute were "enforced" against Reliance, they would not proscribe merely speaking about forming a physician-owned entity. For this reason, Reliance cannot possibly demonstrate that fear of enforcement of the 2013 SFA has chilled its speech.

What has "chilled" Reliance's speech about forming a physician-owned entity, the Court surmises, is its fear that forming such an entity will be viewed as illegal. Reliance's argument is, at base, that the 2013 SFA has created uncertainty regarding whether such conduct is legal, thereby inhibiting it from discussing it. This is not a First Amendment injury that would confer standing. "[E]very criminal law, by its very existence, may have some chilling effect on personal behavior. That was the reason for its passage." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1129-30 (9th Cir. 1986). *See also Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995) (anti-kickback statute "regulates only economic conduct. It chills no constitutional rights.")

Because Reliance has not alleged even a threatened First Amendment injury, Reliance's allegations regarding the First Amendment do not demonstrate that it has standing.

2.   *Reliance Has Not Alleged An Injury-In-Fact In Connection With Its Allegation That Its Due Process Rights Have Been Violated*

Reliance contends that "OIG's arbitrary and capricious designation of all physician-owned entities as 'inherently suspect under the anti-kickback statute' has cloaked Reliance in a presumption of

guilt in violation of Reliance's due process rights under Fifth and Fourteenth Amendments."[1] The Court finds that Reliance has not demonstrated it suffered an injury-in-fact as a result of any denial of due process.

Reliance's Complaint does not identify any purportedly deficient process, nor does it identify any deprivation of a cognizable interest in life, liberty, or property as a result of that process. These deficiencies in the pleading are themselves grounds for dismissal of the due process claim. *See* Fed. R. Civ. P. 8(a)(2) (pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Reliance's Opposition clarifies that the due process claim is based on a "stigma plus" theory. Reliance cannot cure fatal deficiencies in its Complaint's pleadings by adding detail in its Opposition. Even if it could, the Opposition makes it abundantly clear that Reliance does not have standing to raise a due process claim on these facts.

Under the "stigma plus test," "a plaintiff must show the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the denial of 'some more tangible interest such as employment,' or the alteration of a right or status recognized by state law." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). Reliance satisfies neither prong of the test and therefore has failed to establish an injury-in-fact in connection with its due process claim.

As to the "stigma" prong, Reliance quotes *Humphries v. County of Los Angeles* for the proposition that "'imputing criminal behavior to an individual' is 'implicitly' stigmatizing." 554 F.3d 1170, 1185 (9th Cir. 2009), *overruled on other grounds*, 131 S.Ct. 447 (2010). Reliance does not explain how OIG's issuance of the 2013 SFA could possibly impute criminal behavior to Reliance when Reliance admittedly does not operate a physician-owned entity. Nor can Reliance satisfy the second prong, which requires that the government action have altered some right or status recognized by law. Even if the 2013 SFA somehow altered the rights or statuses of physician-owned entities, Reliance does not purport to operate a physician-owned entity. For these reasons, even if Reliance's stigma plus theory could support a cause of action by a physician-owned entity, it is clear that any injury to Reliance is purely speculative. As such, Reliance does not have standing to raise a due process claim.

3.   *Reliance Has Not Alleged An Injury-In-Fact In Connection With OIG's Failure To Engage In Notice And Comment Rulemaking*

Reliance alleges that Defendants violated the Administrative Procedure Act by issuing the 2013 SFA before first giving interested persons an opportunity to participate in rulemaking through submission of written data, views, or arguments. (Pl.'s FAC, at 14.) The Court finds that Reliance does not have standing to raise this claim.

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing. Only a 'person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (quoting *Lujan*, 504 U.S. at 572, n. 7)) (emphasis in original). *See also Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010) ("deprivation of procedural rights, alone, cannot confer Article III standing") (citing *Summers*, 555 U.S. at 496).

---

[1]Only the Fifth Amendment applies to the Federal Government. *See* U.S. Const., amend. XIV, § 1.

Reliance contends that its APA claim is not asserted "in vacuo," but rather is "'tied to application of the' 2013 SFA to Reliance and the 'imminent injury' that Reliance faces." (Pl.'s Opposition, at 16.) Reliance acknowledges, however, that the 2013 SFA has not been applied to it. Nor could it have been, because Reliance does not operate any physician-owned entities. Reliance's argument appears to be that, if Reliance decides to form a physician-owned entity, the 2013 SFA could be applied against it. This threatened injury is too speculative to support standing.

### B.   Even If Reliance Had Standing, The Court Would Decline To Exercise Jurisdiction

For the reasons outlined above, the Court does not believe that it has subject matter jurisdiction over this dispute. However, even if the Court had subject matter jurisdiction, it would decline to exercise it. The concerns that lead this Court to conclude that Reliance lacks standing also lead the Court to conclude that this dispute is not yet ripe for determination.

### 1.   _The Court Has Discretion To Decline To Exercise Jurisdiction In This Case_

The decision whether to entertain a lawsuit seeking federal declaratory relief is discretionary. *Government Employees Ins. Co. v. Dizol*, 133 F.2d 1220, 1223 (9th Cir. 1998) (citing *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)). *See also Public Affairs Associates v. Rickover*, 369 U.S. 111, 112 (1962) (the Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."). A Court must entertain any "[c]laims that exist independent of the request for a declaration," as such claims "are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule." *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d at 1167 (9th Cir. 1998) (quoting *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 & n. 6 (9th Cir.1996)).

Plaintiff's Complaint seeks only declaratory relief; Plaintiff does not plead any independent claims. As such, this Court has discretion to decline to exercise jurisdiction over this action.

### 2.   _This Dispute Is Not Fit For Judicial Resolution_

Even if Reliance had standing, the Court would not be satisfied that this matter is ripe for determination at this time. The ripeness doctrine offers "prudential reasons for refusing to exercise jurisdiction." *Nat'l Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). "In determining whether a challenge to an administrative regulation is ripe for review a twofold inquiry must be made: first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied at that stage." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 162 (1967). A matter is typically unfit for review where it challenges an agency regulation that has yet to be enforced. *See id.*

The prudential considerations embodied in the doctrine of ripeness militate against exercising jurisdiction over this matter. Because there has been no "concrete action" applying the 2013 SFA, the factual components of the controversy have not yet come into focus. *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 808. *See also Colwell v. Dep't of Health & Human Services*, 558 F.3d 1112, 1128 (9th Cir. 2009) (case challenging HHS Policy Guidance "unfit" for review absent "examples of the manner in which HHS has used the Policy Guidance - as, for example, in an enforcement proceeding.")

For this reason, even if the Court had subject matter jurisdiction in this case, the Court in its discretion, *see* 28 U.S.C. § 2201(a), would decline to exercise it.

## V.   __CONCLUSION__

For the above reasons, the Court **GRANTS** Plaintiff's Motion to Dismiss.

**IT IS SO ORDERED.**

_____ : _____

**Initials** **of** **Preparer**                    _____